UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERWIN T. MCKINNEY, | : | |
|     Plaintiff | : | CIVIL ACTION NO. |
| v. | : | 3:06-CV-832 (JCH) |
| | : | |
| CITY OF HARTFORD, | : | FEBRUARY 25, 2008 |
|     Defendant | : | |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 20]**

Plaintiff Erwin McKinney brings this employment discrimination action against his employer, the City of Hartford ("the City"). In 2004, McKinney was terminated from a part-time position supervising youths in an after-school basketball league. One year later, and following a formal grievance process, a state arbitration panel reinstated McKinney to his position. The panel refused to award him backpay.

McKinney alleges that his original termination was a result of racial discrimination. The City contends that McKinney has presented no evidence of improper motive, and it has filed a Motion for Summary Judgment. See Doc. No. 20. The court agrees, and it **GRANTS** the City's Motion.

**I.  STANDARD OF REVIEW**

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present

1

such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## II.  FACTUAL BACKGROUND

McKinney has worked for the City since 1988. McKinney Aff. ¶ 6. In 2000 he became a Recreation Specialist, a part-time position. Id. ¶¶ 6-7. McKinney's immediate supervisor was Andress Chapparro. Id. ¶ 9. Chapparro's supervisors were Roman Rojano and Penelope Letto. Id. ¶ 10.

On April 22, 2004, McKinney was supervising several youths participating in a basketball game. Id. ¶ 12. Two youths began engaging in horseplay, and McKinney told them to "knock it off." Id. One of them responded by throwing the score clock on the floor, at which point McKinney told him to leave the recreation center. Id. The youth refused to leave, responding that he "would leave when he was ready to leave." Id. ¶ 13. McKinney approached him, and the youth responded by grabbing McKinney's arm. Id. McKinney, in turn, grabbed the youth by the arm to escort him out. Id.

The youth refused to comply, and instead grabbed McKinney and his basketball

2

whistle, and also punched McKinney in the side of the face.  Id. ¶ 14.  McKinney, acting out of what he says was self-defense, punched back.  Id.  Two of McKinney's co-workers, Les Wilson and Lou Delgado, witnessed the altercation and intervened to separate the two.  Id. at ¶¶ 14-15.

On April 26, 2004, Leto and Chapparro informed McKinney that he would be placed on administrative leave, with pay, pending an investigation of the incident.  Id. ¶ 18.[1]  The next day, Leto and Chapparro told McKinney that they had spoken to the Director of Personnel, Santiago Malave, and that he had recommended that McKinney resign.  Id. ¶ 19.  McKinney refused to resign and, on May 7, 2004, the City's Personnel Department held a fact-finding hearing.  Id. ¶¶ 21-22.  Chapparro, Santiago, and Leto were present at the hearing, as was Joyce Chin, the Principal Personnel Analyst, and a union representative.  Id. ¶ 22.  Several weeks after the hearing, Rojano sent McKinney a letter informing him that he had been terminated.  Id. ¶ 24.

McKinney's employment with the City was governed by a collective bargaining agreement, and that agreement allowed McKinney to ultimately appeal his termination to the Connecticut State Board of Mediation and Arbitration ("SMBA").[2]  See Conn. Gen. Stat. § 31-91 et seq.  Before the SMBA, McKinney argued that the City did not have "just cause" to terminate him, as was required under the collective bargaining agreement.

---

[1] This was the first time in McKinney's career that he had been subjected to disciplinary action of any kind.  McKinney Aff. ¶ 6.

[2] Before taking the appeal to the SMBA, McKinney took an intermediate appeal. The intermediate appeal led to no change in punishment.  See McKinney Aff. at ¶¶ 25-26.

3

On July 6, 2005, the SMBA agreed that the City did not have just cause for its termination, and it ordered that McKinney be reinstated to his prior position. However, the SMBA refused to award back pay. In explaining its decision, the SMBA stated that it credited McKinney's version of the events. Defendant's Exh. A at 5. But the SMBA also stated that:

> [G]iven the purpose of the program and the relative disproportionate size of the boy and [McKinney], the Panel could not condone what physical action [McKinney] took, albeit the claim of self-defense. The Panel felt that some form of discipline was warranted in this case. Regardless of the type of child placed in the care of those running a program, non-violent alternatives must be used first. On the other hand, an employee must also expect to work in a safe environment, free of personal and physical attack.
>
> It was these two opposing views that the Panel weighed. The deciding factor was that the [program] had no policy for its employees to follow in such a situation. Therefore, what rule was violated to warrant termination? None was cited. Was any discipline warranted? The Panel found in the affirmative. Given [McKinney's] background [as a former police officer], he was aware of "necessary force[."] He was aware there were other employees in the area who had come to assist him . . . . Consequently, the Panel found the City did not have just cause to terminate [McKinney]. The termination is to be treated as a suspension until [McKinney] is returned to work.

Id.

Unhappy with his partial victory, McKinney filed a two-count Complaint in this court. See Doc. No. 1. In his Complaint, McKinney alleged that he had been terminated on the basis of his race, and he brought claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Connecticut Fair Employment

4

Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60.[3] McKinney sought damages to compensate him for the time he was out of work.

## III. ANALYSIS

Although McKinney brings suit under a state employment discrimination statute, in addition to Title VII, his claims under both are analyzed by using the burden shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Brittell v. Dept. of Corr., 717 A.2d 1254, 1264 (Conn. 1998). This means that McKinney must first establish a prima facie case of racial discrimination. Graham, 230 F.3d at 39. If McKinney successfully does so, the burden shifts to the City to articulate a legitimate, non-discriminatory reason for its actions. Id. Once the City articulates such a reason, the burden shifts back to McKinney to prove that discrimination was the real reason behind his employer's actions. Id.

To establish a prima facie case of discrimination, McKinney must demonstrate: (1) that he is part of a protected class; (2) that he was qualified for his position; (3) that he suffered an adverse employment action; and (4) that the circumstances surrounding that employment action give rise to an inference of discrimination. Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001). The Second Circuit has "often emphasized [that] the burden of establishing this prima facie case in employment discrimination cases is 'minimal.'" McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001). Nonetheless, the plaintiff still has some burden to come forward with sufficient admissible evidence. See Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 65 (2d

---

[3] This court has jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

5

Cir. 1997).

In this case, the City contends that McKinney's claim fails because there is absolutely no evidence that the circumstances surrounding McKinney's termination could lead to an inference of discrimination. Defendant's Mem. in Support at 7-8. The City observes that there is absolutely no evidence that the SMBA panel acted in any racially discriminatory manner. Id.; cf. Collins v. N.Y. City Transit Auth., 305 F.3d 113, 118-19 (2d Cir. 2002) (holding that when an employment decision is upheld by an independent arbitration panel, that fact can be "highly probative of the absence of discriminatory intent").

One way that a plaintiff can create an inference of discrimination is by introducing evidence that similarly situated individuals of a different race were treated differently. See, e.g., Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999). That is the course that McKinney has chosen to pursue. He argues that another supervisor in the basketball program, Albert Gonzales, received only a written reprimand after a similar incident. Gonzales is Hispanic, and thus McKinney seeks to draw the inference that he was treated differently on account of his race.

In order for Gonzales to be an appropriate reference point, he need not be identically situated to McKinney. McGuinness, 263 F.3d at 54. However, he does need to be similarly situated in all material respects. Id. Here, McKinney has not introduced evidence that would allow a reasonable jury to conclude that Gonzales was similarly situated in all material respects.

The sole admissible evidence that McKinney points to is a written incident report signed by Chapparro. According to the report, Gonzales had been playing basketball

6

with a youth in the program, and the youth had accidentally hit Gonzales in the face while playing defense. Plaintiff's Exh. 1. The youth began "jokingly laughing" about the incident, during which Gonzales had suffered a "minor cut on the bridge of his nose." Id. In response, according to the report:

> [Gonzales] "lost his cool," [a]nd reacted in a[n] insubordinate manner, and in a manner not becoming [of a staff member in his position] or for that matter any other staff. [Gonzales] . . . yelled out in a profane way and use of language [sic] to [the youth] to ask him to leave. His actions from there on were unprofessional . . . .

Id.

As best can be gleaned from the report, it appears that Gonzales's actions were entirely verbal in nature. There is absolutely no evidence that Gonzales engaged in any physical violence towards the youth, and it is pure speculation to suggest otherwise.[4] In light of this, a reasonable jury could not conclude that Gonzales was similarly situated to McKinney.

Because McKinney has presented no other evidence that would give rise to an inference of racial discrimination, he has failed to make out a prima facie case, and summary judgment must be granted for the City.

## IV. CONCLUSION

The defendant's Motion for Summary Judgment [Doc. No. 20] is **GRANTED**.

---

[4] In his affidavit, McKinney stated that he was "informed" by a co-worker that Gonzales had choked a youth. This statement is pure hearsay and thus cannot be considered on summary judgment. See Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).

7

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 25th day of February, 2008.

       /s/ Janet C. Hall
Janet C. Hall
United States District Judge